**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jimmy D Puckett,<br><br>        Plaintiff,<br><br>v.<br><br>United States of America,<br><br>        Defendant. | No. CV-21-01453-PHX-SMB<br><br>**ORDER** |

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. 55). Defendant also filed the required statement of facts (Doc. 56), to which Plaintiff filed a response (Doc. 61) and his controverting statement of facts (Doc. 62). Defendant replied (Doc. 65). After reviewing the parties' arguments and the relevant case law, the Court will grant Defendant's Motion.

**I.  BACKGROUND**

This is a medical malpractice case arising from Plaintiff's care at the Southern Arizona Veterans' Administration Health Care Center ("the Yuma VA"). Throughout the course of his care at the Yuma VA, Plaintiff saw Dr. Gilbert in person on five occasions. (Doc. 55 at 3.) Plaintiff also had two telephonic conferences with Dr. Gilbert. (*Id.*) Plaintiff first visited the Yuma VA on February 25, 2013. (Doc. 56-2 at 144–45.) At this visit, Plaintiff complained of joint pain, erectile dysfunction, and blurry vision. (*Id.* at 143–44.) Dr. Gilbert examined Plaintiff and noted that he had Chronic Obstructive Pulmonary Disease ("COPD"), allergic rhinitis, hyperlipidemia, allergies, and degenerative joint

disorder ("DJD"). (*Id.* at 144.) On March 21, 2013, Dr. Gilbert called Plaintiff to inform him of his lab results. (*Id.* at 138.) Plaintiff did not complain of any additional symptoms on this phone call. (*Id.*) On July 23, 2013, Plaintiff visited the Yuma VA complaining of toe pain. (*Id.* at 133–34.) Dr. Gilbert noted that Plaintiff previously had a surgical avulsion of the nail on the subject toe. (*Id.* at 129–30.) Additionally, Plaintiff requested to see a podiatrist in Tucson, and in response Dr. Gilbert entered the consult. (*Id.* at 127–29.) Plaintiff next visited the Yuma VA on October 31, 2013 for a routine follow up. (*Id.* at 123–27.) At this visit, Dr. Gilbert reviewed Plaintiff's symptoms for his other conditions and conducted another physical examination. (*Id.*)

On March 20, 2014, Plaintiff had another visit. (*Id.* at 114–20.) Plaintiff reported that a nurse practitioner at a CVS clinic prescribed him antibiotics for a sinus infection, but that his symptoms were not improving. (*Id.*) Dr. Gilbert ordered a CT scan to rule out any physical abnormalities. (*Id.* at 111.) On April 17, 2014, Dr. Gilbert called Plaintiff to inform him that the CT scan results were normal and that she placed a consult request for him to see an ENT. (*Id.* at 108.) Plaintiff's final visit occurred on July 31, 2014. (*Id.* at 101–08.) Plaintiff now reported that he had been experiencing left shoulder pain since 2003. (*Id.*) Based on the length of time and the complaint that the pain worsened when he used the shoulder, Dr. Gilbert considered this pain consistent with DJD. (Doc. 62-6 at 104.) Plaintiff also complained of his recurring headaches and reported that his COPD was worsening. (Doc. 56-2 at 101.) Dr. Gilbert ordered an MRI to rule out any structural abnormalities that may be causing the headaches. (*Id.* at 103.) For the COPD, Dr. Gilbert ordered a chest x-ray and switched Plaintiff's inhalers. (*Id.*)

Two days after this appointment, Plaintiff suffered a heart attack. (Doc. 55 at 7.) He was transported to Yuma Regional Medical Center ("YRMC") by ambulance. (*Id.*) In the ambulance, he had two EKGs, both of which showed normal sinus rhythms. (Doc. 56-4 at 12–13.) At YRMC, Plaintiff underwent an angioplasty and received two stents. (*Id.*) After the surgery, he was moved to the intensive care unit, where a YRMC physician placed a central line into Plaintiff's femoral artery instead of his femoral vein. (*Id.*) This caused

1 gangrene in the leg, which in turn required the leg to be amputated.  (*Id.*)  That injury was
2 the subject of a different, previously settled lawsuit with YRMC and the YRMC physicians.

3       Plaintiff now alleges that Dr. Gilbert breached the standard of care by failing to
4 recognize that his symptoms showed coronary artery disease.  (Doc. 1 at 4–6.)  Plaintiff
5 asserts that based on his reported symptoms, Dr. Gilbert should have recognized that he
6 was at risk of a heart attack and ordered an electrocardiogram ("EKG"), ordered other
7 cardiac tests, or referred him to a cardiologist.  (*Id.*)

8       Plaintiff initially submitted an administrative claim, consistent with the Federal Tort
9 Claims Act ("FTCA").  (*Id.* at 2.)  On September 6, 2016, that claim was denied.  (*Id.* at
10 3.)  Plaintiff then sought reconsideration of that decision.  (*Id.*)  The VA's reconsideration
11 process did not change their decision, and it conveyed a final denial to Plaintiff.  (*Id.*)
12 Plaintiff now brings his single claim of medical negligence in federal court as permitted by
13 28 U.S.C. § 2675(a).  (*Id.* at 7.)

## II. LEGAL STANDARD

Summary judgment is appropriate in circumstances where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of a case under the applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes are genuine when the evidence could allow a reasonable jury to find in favor of the nonmoving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)–(B).  Additionally, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in the nonmovant's favor. *Anderson*, 477 U.S. at 255. Additionally, the Court does not make credibility determinations or weigh the evidence. *Id.* at 253. The determination of whether a given factual dispute requires submission to a jury is guided by the substantive evidentiary standards that apply to the case. *Id.* at 255.

The burden initially falls with the movant to demonstrate the basis for a motion for summary judgment, and they must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. If this initial burden is not met, the nonmovant does not need to produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). However, if the initial burden is met by the movant, then the nonmovant has a burden to establish that there is a genuine issue of material fact. *Id.* at 1103. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Zenith Radio Corp.*, 475 U.S. at 586. Bare assertions alone do not create a material issue of fact, and "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 247–50 (citations omitted).

Moreover, under FTCA, a Plaintiff may sue the United States for personal injury claims caused by:

> "[T]he negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

28 U.S.C. § 1346(b)(1). The alleged negligence occurred in Arizona. Therefore, Arizona law provides the applicable standard of negligence. *See id.*; *Massachusetts Bonding & Ins. Co. v. United States*, 352 U.S. 128, 129 (1956).

To establish liability for medical malpractice in Arizona, a plaintiff must prove that (1) the health provider in question "failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class to which

he belongs within the state acting in the same or similar circumstances" and (2) that the failure "was a proximate cause of the injury." Ariz. Rev. Stat. § 12-563. Generally, the standard of care is established by expert medical testimony. *Seisinger v. Siebel*, 203 P.3d 483, 492 (Ariz. 2009).

"Causation is generally a question of fact for the jury unless reasonable persons could not conclude that a plaintiff had proved this element." *Barrett v. Harris*, 207 Ariz. 86 P.3d 954, 958 (Ariz. Ct. App. 2004). To prove causation, a plaintiff must show "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produce[d] an injury, in whole or in part, and without which the injury would not have occurred." *Sampson v. Surgery Center of Peoria, LLC*, 491 P.3d 1115, 1118 (Ariz. 2021) (quoting *Barrett*, 86 P.3d at 958). Furthermore, the injury must be "probable, not merely speculative." *Id.*

### III. DISCUSSION

#### A. Local Rules Violations

The Local Rules require both parties to file separate statements of facts when briefing summary judgment. LRCiv 56.1. The moving party is required to set forth each material fact in a separately numbered paragraph that refers to a "specific admissible portion of the record where the fact finds support." LRCiv 56.1(a). The opposing party must file a controverting statement of facts that (1) responds to each paragraph of the moving party's statement of facts, indicating whether the opposing party disputes the facts set forth, and (2) provides any additional facts that rase a genuine issue of fact or preclude summary judgment. LRCiv 56.1(b). The Court also instructed the parties to review *Hunton v. Am. Zurich Ins. Co.*, No. 16-00539, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018) before briefing summary judgment. (Doc. 17 at 4.)

*Hunton* addresses Local Rule 56.1, noting that the rule "imposes specific requirements on the form and content of summary judgment with the goal of simplifying the process." 2018 WL 1182552, at *2. Specifically, the *Hunton* court remarked that the rule "requires the controverting party to provide a specific record reference supporting the

party's position if a fact is disputed; it does not permit explanation and argument supporting the party's position to be included in the response to the moving party's statement of facts." *Id.* (quoting *Pruett v. Arizona*, 606 F. Supp. 2d 1065, 1075 (D. Ariz. 2009)). Therefore, Plaintiff violated LRCiv 56.1(b) by providing commentary beyond merely admitting or denying factual assertions along with objections in their controverting statement of facts. (Doc. 550 at 3–4.) Ultimately, this hinders the effective resolution of Defendant's Motion.

Additionally, the Court retains discretion to decline to consider anything "additional" in a statement of facts. *See Hunton*, 2018 WL 1182552, at *3 (noting that the Court *may* disregard everything but the word "admitted" or "disputed" and the corresponding references to the record, along with any improperly disputed facts). The Court will exercise such discretion here. Plaintiff repeatedly includes expositional facts and explanation in his controverting statement of facts. But explanation and argument belong in the responsive motion, not in the statement of facts. If Plaintiff believes that information beyond a simple admit or deny is in order, he must admit the assertion and include additional material information in a separately numbered paragraph. *See* LRCiv 56.1(b); *Hunton*, 2018 WL 1182552 at *3. Therefore, every explanation or argument supporting Plaintiff's position inserted after a "disputed" or "undisputed" response will not be considered. *See Hunton*, 2018 WL 1182552, at *2.

Furthermore, the Court will not consider the arguments made in Plaintiff's statement of facts. The Local Rules require parties to list their objections "summarily without argument." LRCiv 7.2(m)(2). Plaintiff instead incorporated his objections into his contravening statement of facts. Accordingly, these arguments will also not be considered. *See Am. Express Co. v. Ponnambalam*, No. CV-18-03237-PHX-SMM, 2020 WL 13442489, at *4 (D. Ariz. Apr. 7, 2020). The Court also notes that it instructed parties to limit their required statements of facts to ten pages, exclusive of exhibits. (Doc. 17 at 4.) Defendant's statement of facts is twelve pages (Doc. 56), while Plaintiff's is twenty-nine pages (Doc. 62).

The Court does not condone parties ignoring page limitations and placing arguments

within a separate statement of facts. The Court reminds the parties to diligently follow the local rules of this District.

### B. Causation

As stated above, the Court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Defendant primarily argues that Arizona law requires competent testimony from causation experts in medical malpractice cases and that here, Plaintiff's expert failed to meet this standard. (Doc. 55 at 9–10.) Specifically, Defendant argues that because Dr. Vega's opinion does not sufficiently show causation it cannot survive summary judgment. (*Id.* at 12–13.) Defendant argues that his report does not sufficiently "connect the dots" between the failure to meet the standard of care and the cause of Plaintiff's injuries, thereby leaving the jury to speculate as to the issues regarding causation. (*Id.* at 13.) Ultimately, Defendant contends that because Plaintiff cannot show causation, he has not presented a prima facie case of medical negligence. (*Id.* at 16.)

Plaintiff counters that Dr. Vega's report shows that Dr. Gilbert's alleged negligence increased the risk of injury, and that the step from increased risk to causation is for the jury to determine. (Doc. 61 at 8.) Plaintiff also argues that Dr. Vega did not equivocate in his assessment and was clear that Dr. Gilbert's negligence led to Plaintiff's heart attack. (*Id.* at 11–12.) Specifically, Plaintiff argues that the use of the word "could" in Dr. Vega's opinion does not undercut his conclusion that Dr. Gilbert's actions were the proximate cause of Plaintiff's injury. (*Id.* at 13.) Lastly, Plaintiff contends that Dr. Vega's opinion is not even necessary because causation will be readily apparent to the jury via other evidence. (*Id.* at 15–16.) To support this, Plaintiff points to the medical records, arguing that they show the symptoms of an imminent cardiac event that a jury could understand. (*Id.* at 16.)[1]

---

[1] The parties also trade arguments on Dr. Vega's qualifications to provide expert testimony. However, the proper avenue for that argument is a *Daubert* motion. Because those arguments are not dispositive as to causation, the Court will not address them.

Arizona law requires a causation showing in medical negligence actions. Ariz. Rev. Stat. § 12-563(2). Further, the plaintiff carries the burden of proof on causation. *See Bekendorf v. Advanced Cardiac Specialists Chartered*, 269 P.3d 704, 707 (Ariz. Ct. App. 2012). To prove causation, a plaintiff must show "a natural and continuous sequence of events stemming from the defendant's act or omission, unbroken by any efficient intervening cause, that produces an injury, in whole or in part, and without which the injury would not have occurred." *Barrett*, 86 P.3d at 954. "[I]n most instances the applicable standard of care, and the probable consequences of failing to meet that standard, are beyond ordinary lay knowledge." *Sampson*, 491 P.3d at 1118; *see also Rasor v. Nw. Hosp., LLC*, 403 P.3d 572, 575 (Ariz. 2017). Therefore, "the standard of care normally must be established by expert medical testimony." *Seisinger*, 203 P.3d at 483. The only "narrow exception" to this general rule is when causation is "readily apparent" to a lay person. *Sampson*, 491 P.3d at 1118.

In a case where the standard of care is disputed, like it is here, expert guidance is necessary to help lay jurors determine liability. *Id.* at 1119. To prove causation, experts are utilized to "connect the dots" from a claimed violation of the standard of care to the cause of the injury. *Id.* at 1120. Lastly, the plaintiff must show that causation is probable, not merely possible or speculative. *Id.* at 1118; *Robertson v. Sixpence Inns of Am., Inc.*, 789 P.2d 1040, 1047 (Ariz. 1990); *Kreisman v. Thomas*, 469 P.2d 107, 110 (1970); *Bekendorf*, 269 P.3d at 706 (Ariz. Ct. App. 2012). Therefore, expert medical testimony that a subsequent illness or disease "could" or "may" have been the cause of the injury is generally insufficient unless there is "sufficient additional evidence indicating the specific causal relationship." *Id.*

The Court agrees that Dr. Vega has failed to connect the dots from the initial alleged negligence to Plaintiff's heart attack. To begin, Dr. Vega's report includes the following two opinions:

> "Dr. Lisa Gilbert failed to meet the standard of care for a reasonable family physician in failing to recognize the symptoms of coronary artery disease evident in Mr. Jimmy Puckett from 2013 to 2014. Her failure to act on these

>symptoms with further testing and/or referral were also below the standard of care.
>
>Dr. Gilbert failed to record Mr. Puckett's history in the medical record, which is also below the standard of care."

(Doc. 56-4 at 47.) Notably, *neither* of these opinions reference causation in any way. Instead, they provide opinions regarding the relevant standard of care. Knowing that he cannot rely on either of these opinions for causation, Plaintiff instead relies on a later statement that is not even in Dr. Vega's section on opinions. On the next page, Dr. Vega's report states: "I am certain that this outcome *could* have been avoided with the right diagnostic workup and the combination of invasive interventions, such as coronary angioplasty or surgery, and medications such as high-intensity statins and antiplatelet drugs." (Doc. 56-4 at 48.) But even this statement—which again is not an opinion— merely alludes to causation. It uses the speculative qualifier of "could." Moreover, the statement only advances a mere *possibility* that if Dr. Gilbert had taken different actions, Plaintiff's heart attack *could* have been avoided. This is not a conclusion, but rather an invitation for a jury to speculate on what caused Plaintiff's injury. As discussed, Arizona law requires more than the possibility that the act or omission merely *could* have led to the injury.

Nonetheless, Plaintiff attempts to transform this statement into a causation opinion. That is impermissible. Yet even if taken at face value, the statement does not provide any clarity on causation. Specifically, Dr. Vega believes Dr. Gilbert should have immediately ordered an EKG and cardiac stress test. (*Id.* at 47.) But he does not provide any follow up on that speculation. For instance, what if Dr. Gilbert had performed an EKG, but results came back normal? This was certainly possible, given the fact that Plaintiff's two EKGs performed on the day of his heart attack revealed normal sinus rhythms. (*Id.* at 12–13.) Dr. Vega also does not explain the "diagnostic workup" or "invasive interventions" he thinks Dr. Gilbert should have performed, or their success rates. Lastly, even if Dr. Gilbert referred Plaintiff to a cardiologist, there is no indication on what tests or interventions the cardiologist would normally undertake, or what their effect would be. These unanswered

questions leave the jury to speculate, which is impermissible under Arizona law. Moreover, they fail to show a natural and continuous sequence of events stemming from Dr. Gilbert's alleged failure to act and therefore do not show proximate cause.

Plaintiff attempts to distinguish *Sampson*. The expert in *Sampson* equivocated on the standard of care, which created "speculation built upon inference." 491 P.3d at 1118. Here, Plaintiff argues that Dr. Vega was "certain" Plaintiff could have avoided his heart attack if Dr. Gilbert had met the standard of care, and therefore no speculation is required. (Doc. 61 at 12.) Plaintiff also notes that an expert does not need to provide an opinion that declares one hundred percent certainty. (*Id.* at 15.) That is true. But *Sampson* requires more than a mere possibility that a different course of action would have resulted in a different outcome. The opinion must show the natural and continuous sequence of events that "connect the dots" between the alleged act or omission and the injury. *Sampson*, 491 P.3d at 1118–20. As noted above, Dr. Vega's report does not sufficiently connect these dots. Instead, it leaves more questions than answers and forces the jury to speculate as to causation.

Plaintiff also urges the Court to look to *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 9 P.3d 314 (Ariz. 2000). However, *Reinen* is procedurally distinguishable. In *Reinen*, the Arizona Supreme Court reversed a directed verdict that rested on a medical expert's alleged failure to show proximate cause. *Id.* at 318. The expert testified at trial on both the standard of care and causation. *Id.* at 317. Further, this testimony was given without any foundational objection at the time. *Id.* The court specifically focused on this fact. *See id.* The case here is not before a jury, and Defendants have noted the gaps in Dr. Vega's testimony at the summary judgment stage. Further, even if *Reinen* had put forth a clearer standard, *Sampson* outlines the more recent standard and therefore controls.

Lastly, Plaintiff cannot establish causation by inference. The alleged causation in this case would not be obvious to an ordinary lay person. An ordinary juror will not have knowledge of the standard of care of a general medical practitioner or the probable consequences of failing to meet that standard. *Sampson*, 491 P.3d at 1118. Therefore, any

causation would not be readily apparent to a jury. They would understandably require expert medical testimony to establish, and understand, the standard of care. *Seisinger*, 203 P.3d at 483. Accordingly, the Court finds that Plaintiff fails to establish causation by inference.

In sum, causation is a required element, and Plaintiff has failed to make a sufficient showing on that element. *See Celotex*, 477 U.S. at 322–23. Accordingly, the Court will grant Defendant's Motion.

## IV.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED granting** Defendant's Motion for Summary Judgment (Doc. 55).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and terminate this case.

Dated this 5th day of December, 2023.

_____
Honorable Susan M. Brnovich
United States District Judge